CABEJBD, J.,
delivered the opinion of the court. The only question is as to the validity of the deeds. It may be well to premise that although Robert B. Armistead was not appointed the guardian of his sister, in the forms prescribed by law, yet, under the circumstances of this case, a court of equity must regard and treat him as if he had been her legal '^guardian; and as the deed of gift was procured by him, for the benefit of his infant son, that deed will be regarded as if it had been executed directly to himself.
As the rights of Aylet Waller, whatever they may have been, were lost by his death in the lifetime of his wife, it is not necessary for the court to decide what his rights would be, in case he were still alive. We deem it proper, however, to observe, that deeds executed by a woman just before her marriage, and giving away her property without the knowledge of her intended husband, are fraudulent and void as to the husband.
As to the rights of Mrs. Waller: The case of Hatch v. Hatch, 9 Ves. 292, (to whmh many others might be added) is extremely strong to shew the readiness and determination with which the courts will protect the interest of wards, by setting aside conveyances made by them in favour of their guardians, shortly after they attain their age, or at or before the time of settling the accounts and delivering up the estate. So many undue advantages may be taken in such cases, by means of the influence which may, in various ways, be exercised by the guardian, that the law, on a principle of public policy, vacates all such conveyances, without any proof of actual fraud whatever. On this ground, the court is clearly of opinion, that the deed of gift executed by Miss Armistead, is null and void. But there are particular circumstances which make it still more apparent. The time selected for the execution of the deed, *238 a few minutes only before the marriage; the absence of all proof1 of any previous intention of Miss Armistead to execute any such deed; the absence of proof that she had, at the time it was executed, any knowledge of its character or object; added to the care with which it was concealed from her friends, and particularly from her intended husband, who was then in the house; combine to stamp it with the foulest fraud.
Then, as to the deed of acquittance and discharge, executed by Miss Armistead to her brother. Chancellor Kent, in Kirby v. Taylor, 6 Johns. Ch. Rep. 242, draws a distinction ^between a deed giving a gratuity or bounty to a guardian in remuneration of an antecedent duty, and a deed of release, acquittance or discharge. He admits that the policy of the law utterly reprobates the former, as being absolutely null and void; but he contends that a simple release is prima facie good, and consequently (as we understand him) will not be set aside, unless it be shewn to be unfairly obtained. We cannot perceive the justness of this distinction. A simple release, by which the guardian is exonerated from accounting, and consequently from paying a just balance which may be in his hands, is as much a gratuity as a direct gift by formal conveyance. It may be as gainful to the guardian, and as disadvantageous to the ward, as a direct gift would be. And if such a practice were tolerated, it would lead to greater mischiefs than would result from sanctioning direct gifts or gratuities; for wards might be much more easily induced to grant releases for unascertained balances of unsettled accounts, than to make direct gifts of what they have in possession, and know to be their own. Besides, if we say that every acquittance executed by a ward is prima facie good, we exempt the guardian from the obligation of shewing that it was given in consequence of a just settlement, or that if a settlement had been made, nothing would have been due to the ward; and we throw upon the ward the burthen of proving that the settlement (if one was made) was not fair, or that if a fair one were made, the guardian would be brought in debt. This shifting the burthen of proof, in such cases, is intirely contrary to our ideas of propriety. We think therefore that an acquittance or release given shortly after a ward comes of age, or before or at the .time of giving up the estate, so far as it may be sought to be used either as evidence of a fair settlement or a discharge from the obligation of making such a settlement, stands on the same footing as a direct gift or gratuity. But in addition to the great principle of public policy, the acquittance, in this case, stands reprobated by all the circumstances of fraud, which we have already mentioned as attaching to the deed of gift.
*The objection as to the length of time that was permitted to elapse before the institution of the suit, cannot be made to apply to Mrs. Waller; because she was under the legal disability of cover-ture from the date of the deeds to the time when the suit was brought. It is not material, and therefore we give no opinion as to the effect of such an objection, if it had been made against Waller. We shall only observe, that in the case of Hatch v. Hatch, before referred to, relief • was given after a much longer time, and even to a husband who had participated in the fraud.
Decree reversed.